JUDGE SCHOFIELD

# 13 CV 4371

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

RICHARD NOBLE,

                          Plaintiff,

        - against -

NIKE, INC.,

                     Defendant.

-----------------------------------------------------------------x

_____ CIV _____

**COMPLAINT**

JURY TRIAL
DEMANDED

ECF CASE

Plaintiff, RICHARD NOBLE, by his attorneys, EDWARD C. GREENBERG, LLC,

alleges as follows:

## PARTIES

1.   At all times hereinafter mentioned, plaintiff RICHARD NOBLE (hereinafter

"NOBLE") was, and still is, a highly regarded professional photographer, who with respect to

matters relevant herein, has done business in the form of a sole proprietor.  Noble resides for part

of the year in the State of Florida and for the rest of the year in the Republic of Ireland.

2.   Defendant NIKE, INC. (hereinafter "NIKE") is a large multi-national foreign business

corporation, duly organized and existing under the laws of the State of Oregon, and is authorized to

do business in the State of New York with an office to do business located at 6 East 57th Street,

New York, New York 10022.

## JURISDICTION AND VENUE

3.   This is a civil action for copyright infringement.

4.   Jurisdiction is conferred upon this Court by 28 U.S.C. Section 1338.

5.   Venue in the Southern District of New York is proper pursuant to 28 U.S.C. 1400.

## FACTS COMMON TO ALL CLAIMS

6.   That Plaintiff NOBLE is a professional photographer with many years of experience who has photographed celebrities such as Bo Jackson, Pierce Brosnon, Bob Dylan, Burt Lancaster, Angela Lansbury, Cher, Darryl Strawberry, Kevin Kostner, Dione Warwick and Robert Wagner.

7.   NOBLE photographed legendary pro-baseball *and* pro-football player Bo Jackson in 1987 and created the photograph that is the subject of this litigation, a copy of which is annexed hereto as **Exhibit "A"** (hereinafter the "Image" or the "Subject Image").

8.   That Bo Jackson won the Heisman Trophy in 1985 (college football's most prestigious honor), and was the first athlete to be named as the Most Valuable Player in two major American professional sports.

9.   That Bo Jackson played in the National Football League for the Oakland Raiders, and in Major League Baseball for The Kansas City Royals.

10.   That as of the date of this Complaint, Bo Jackson is widely recognized as one of or the greatest athletes to ever live.

11.   That notwithstanding that Mr. Jackson was forced to retire due to a well-publicized life threatening injury sustained while playing football for the Oakland Raiders, he attempted a comeback in professional baseball following the installation of an artificial hip.  He was the first professional athlete to attempt to play at a professional level with a surgically implanted artificial hip.

12.   That Plaintiff NOBLE is the sole creator of and holds the copyright in the subject image, and duly registered same with the United States Copyright Office on August 6, 1990, registration number VA 408-847 (a copy of the registration is annexed hereto as **Exhibit "B"**).

13.   That in the late 1980s, NIKE sought and obtained the services of NOBLE to create

photographic images of Mr. Jackson around whom it was planning arguably the largest consumer advertising campaign of its type ever attempted.

14.  That in the late 1980s, Noble issued limited license(s) to NIKE for the use of the Subject Image in connection with an advertising campaign for NIKE and/or its products.

15.  That in the late 1980s and early 1990s, NIKE implemented the iconic "Bo Knows" campaign (hereinafter the "Bo Knows Campaign"), in which they portrayed Bo Jackson playing various types of sports, with the concept that he is a superhero athlete who knows "everything".

16.  That the Subject Image is iconic and captures the spirit of the Bo Knows Campaign.

17.  That the Subject Image by NOBLE portrays Bo Jackson wearing football padding and resting a baseball bat on his shoulders.

18.  That the value of plaintiff's image is substantial as it is an incredibly rare image that captures the sports hero Bo Jackson in both football gear and with a baseball bat.  That many other images of Mr. Jackson portray him as either a football player or a baseball player.

19.  That the subject image created by NOBLE portrays a sports superhero, that has mass appeal and serves as an inspiration to all generations.

20.  The Subject Image further has great value as it serves as the definitive image for the legendary Bo Knows Campaign.

21.  That the Bo Knows Campaign was highly successful, and increased sales for NIKE.

22.  That the massive consumer ad campaign (the Bo Knows Campaign) was constructed and initiated to sell NIKE products endorsed and/or bearing the name of Bo Jackson and to otherwise brand NIKE as a "major player" in the sporting apparel and footwear markets.

23.  That the Bo Knows Campaign was based on Mr. Jackson's multiple sport prowesses and thus was aimed at specific retail "cross training" items.

3

24.  That Nike produces, distributes and sells footwear and other items bearing the Bo Jackson name and/or endorsement and has done so for many years.

25.  That the Bo Knows Campaign is recognized for bringing advertising and branding to a new level, and for being one of the top sports apparel advertisements and campaigns of all time.

26.  That the Bo Knows Campaign has been voted as Number 1 in the "Top Sports Ad Campaigns of All Time" and is/and has been the subject matter of countless articles, lectures and references in the advertising and sports industries.

27.  That in 1999 Ad Age, the advertising industry "Bible", voted the "Just Do It" ad campaign (launched in 1988) the *fourth most effective advertising campaign of all time* by.  Said campaign featured Bo Jackson and a "new comer" one, Michael Jordan.

28.  That the "Bo Knows" Campaign is recognized for propelling NIKE into popular culture, and for bringing NIKE ahead of Reebok, the latter of which was the sports apparel leader prior to the Bo Knows campaign.

29.  That such Bo Knows Campaign(s) was and remains international in scope.  That "Bo Knows" is a phrase that has become part of the American Lexicon and has various definitions in the urban community such as, "He's great but he's no Bo Jackson" and that he is "God".

30.  That the Subject Image serves as the "poster image" for the Bo Knows Campaign, which as set forth herein, remains one of the most iconic sports and/or advertising images of all time.

31.  That NIKE has employed the Image several decades after it was created speaks to its effectiveness as a sales and branding tool.

32.  That NIKE employs the name and persona of Bo Jackson decades after his retirement speaks to his value as a spokesperson, branding tool and the value of associating NIKE products

4

with the Bo Jackson name.

33.  That the Subject Image has a lengthy track record of improving sales and heightening the Nike brand.

34.  That a Google Image Search for "bo knows" returns thousands of results, a substantial portion of which are of the Subject Image and/or derivative works of same.

35.  That the value of the image is heightened as a result of when it was created—at the height of Mr. Jackson's professional sports career, and when his shirtless torso was at its physical peak.

36.  That the image cannot be recreated short of extensive computer manipulation as it was taken of Mr. Jackson over twenty-five years ago in the prime of his professional sports career(s).

37.  That Mr. Jackson is now retired from the professional sports arena, having suffered the above mentioned a hip injury in 1991.

38.  That any attempted copying of the Subject image via "Photoshop" or substantially equivalent software would likely result in a derivative and thus infringing image.

39.  That NIKE employed the SUBJECT image in/or around 1989, 1990, and/or 1991 in connection with the promotion of the NIKE Air cross training shoes and the branding of its company.

40.  That as of the date of this Complaint, Bo Jackson is still active in the media and sports circuits, making frequent appearances at autograph events, and appearances for charities.

41.  That Bo Jackson employs the image in autograph sessions held by him and/or sponsored by third parties regularly and throughout the United States.

42.  That, upon information and belief, NIKE and Bo Jackson have in the past, and/or are at present, in privity of contract with each other.

5

43.  That, upon information and belief, NIKE supplied a copy of the subject image to Bo Jackson.

44.  That legal counsel for Bo Jackson has been advised that any use of the photographs is prohibited sans a license for same.

45.  That as of the date of this Complaint, Bo Jackson is appearing in television commercials, print ads and was recently selected and is now the television spokesman for the popular product "5-Hour ENERGY drink" which boast of having sales of the products running into the *billions* of dollars.

46.  That ESPN has featured a full length movie entitled "Bo Knows" on its network and plays and re-plays same with regularity on or about the date of this Complaint.

47.  ESPN, which is the leading network for sports and sport reporting, has named Bo Jackson as "The Greatest Athlete of All Time".

48.  That Bo Jackson's ability via association with NIKE products in strong domestically and elsewhere to such degree that Nike *still* markets new and newer versions of Bo Jackson "designer" or "collector" footwear which retails for in excess of $250.

49.  That older versions of "Bo Jackson" NIKE shoes are "collectibles" fetching sums many times the retail sale price on eBay, auctions and at sports memorabilia shows.  That Bo Jackson footwear is much sought after in the collectible market.

50.  That, upon information and belief, in 2010, Bo Jackson appeared in television commercials for NIKE along with N.Y. Yankees' All Star second baseman Robinson Cano in connection with NIKE's "BOOM" campaign.

51.  That, upon information and belief, in 2010, NIKE released a set of NIKE cross training shoes, "inspired" by and employing the name of Bo Jackson, and employed plaintiff's Image in

connection therewith, without seeking or obtaining a license, authorization or consent from the copyright holder of the image for such use.

52. That, upon information and belief, in 2011, NIKE released a set of NIKE cross training shoes, inspired by Bo Jackson, and employed plaintiff's Image in connection therewith, without obtaining or seeking a license, authorization or consent for such use from the copyright holder/author whose identity was known to it.

53. That, upon information and belief, in 2012, NIKE released a set of NIKE cross training shoes, inspired by Bo Jackson, and employed plaintiff's Image in connection therewith, without a license, authorization or consent for such use.

54. In October of 2012, ESPN contacted NOBLE requesting permission to use the Subject Image in the upcoming "30 for 30" documentary film of and about Bo Jackson referenced hereinabove. That NOBLE *did not grant ESPN a license for such use as is his right as author of the image.*

55. That on October 24, 2012, NIKE contacted NOBLE and advised that NIKE's creative team was "finalizing" a project and that NIKE wanted to "start talking about potential use".

56. That, upon information and belief, NIKE's initial contact with NOBLE on October 24, 2012, came *after* ESPN contacted NIKE with regard to the use of the Subject Image.

57. That upon information and belief, NIKE had *already* planned on using the Subject Image *and had already included* it in its advertising plan, as of October 24, 2012.

*58.* That NIKE expressed a desire to purchase all of the rights to the image, and that *NOBLE did not agree to same.*

59. That NIKE expressed a desire to obtain a license to use the Subject Image in connection with "North America retail", and that NOBLE stated that he needed to know the full

usage details before discussing or even considering a fee for same in the event he would elect to license the image.

60. That NIKE stated that it wanted to use the image in a "printed look book", a digital book, and that it might (also) supply the image to ESPN to use in a documentary about Bo Jackson – a use which Noble has previously refused to permit.

61. That by the end of 2012, NIKE had delivered a proposed agreement to NOBLE that NOBLE was in the process of reviewing and providing to his counsel for its review.

62. That on January 14, 2013, while still waiting for NOBLE to finish his review of the proposed license agreement, NIKE stated that "the team is hot and heavy to start using the imagery".

63. That in response to said January 14, 2013 email, NOBLE stated that NIKE Should **"hold off for the moment"** and that NOBLE was "considering" proposing an alternative arrangement.

64. That on January 22, 2013, NOBLE stated that he would **not** agree to a "buy out" of all rights in his image as requested by Nike and that he needed NIKE to provide him with "a schedule of what Nike's usage plans are and for how long" and that NOBLE would then draw up the necessary paperwork and license fees for the proposed use should he elect to permit such heretofore unknown use(s).

65. Later on January 22, 2013, NIKE responded to NOBLE that it had informed its team that NOBLE is, "no longer interested in selling so they [the NIKE team] are going back to the drawing board" and that "[t]ruth be told the image may or may not be in the mix".

66. That, upon information and belief, by the time NIKE received NOBLE's January 22, 2013, email, NIKE had already ignored and disregarded the fact that it lacked any license to use

the Image.

67.  That on January 23, 2013, NOBLE on his own discovered that NIKE had *already* been using the Subject Image without his license authorization or consent for trade, branding, sales and commercial purposes and duly notified NIKE of same by email on that date.  Copies of such unauthorized uses by NIKE are annexed hereto as **Exhibit "C"**.

68.  That, upon information and belief, in 2013, NIKE released a set of NIKE cross training shoes, inspired by and employing the name of Bo Jackson, and employed the Subject Image in connection therewith, without a license, authorization or consent for such use.

**69.**  That NIKE *admitted* in an email, dated January 23, 2013, to plaintiff that NOBLE's image "**was indeed used on 2 of our social media channels in early December (Facebook, Twitter/Instagram), so yes we [NIKE] obviously owe you [NOBLE] for those.**"

**70.**  That NIKE further stated that it had in **fact used the Subject Image "in a presentation for our [NIKE's] leadership team to sell-in the overall Bo Jackson 30/30 marketing plan"**.

71.  That, upon information and belief, ESPN employed the Subject Image in promotional, marketing and/or advertising materials for the documentary "30 for 30".

72.  That, upon information and belief, the documentary "30 for 30" became ESPN's highest rated documentary.

73.  That Nike's use of the Subject Image was with full knowledge that it did not possess a license to use the registered work and that notwithstanding such knowledge, employed the image for its sole financial benefit.

74.  That in January of 2013, NOBLE discovered that his image was being used by a myriad of other companies without his license, authorization or consent, and that most if not all of

such uses contained the Nike "swoosh" (logo) in the top right corner of the Subject Image.  Copies of a sampling of said unauthorized uses by third parties are annexed hereto as **Exhibit "D"**.

75.  That as of the date of this Complaint, plaintiff is in the process of investigating dozens of such unauthorized uses, and is in the process of reaching out to such putative infringers and/or their counsel, prior to and in an effort to obviate the need to commence litigation against said companies, pursuant to Federal Rule 11.

76.  That, upon information and belief, Nike has provided the Subject Image to one or more third parties for their use, and/or made the Image available for others to copy and use.

77.  That NOBLE has never published the image on any website.

78.  That Nike has employed the image in its marketing on various social media websites. That the image is ubiquitous and that upon information and belief, Nike's unlicensed use, reproduction and transmission of the images is a primary cause of such rampant copyright infringement by third parties, one or more of which may have no business relationship with Nike.

79.  That, upon information and belief, NIKE is the end source of one or more of the infringements of NOBLE's iconic Image.

80.  That, upon information and belief, NIKE failed to take steps to limit a third party's ability to copy the image electronically, such as including NOBLE's name on the image with a copyright symbol, encrypting the image, warnings against copying, or other technological safeguards to prevent the copying of same.

81.  That, upon information and belief, NIKE included the Subject Image in media and/or press kits, which it provided to third parties, with regard to NIKE merchandise, including shoes inspired by and using the name of Bo Jackson.

82.  That, upon information and belief, at least in or around May of 2013, Sneaker Bar

10

Detroit employed the subject image on its website www.sneakerbar.com in connection with the advertising, marketing, and/or promotion of NIKE merchandise, including the Nike Air Trainer SC High (see Exhibit "D" hereto).

83.  That, upon information and belief, NIKE facilitated, enabled, provided, made the Subject Image available, and/or otherwise contributed to Sneaker Bar's use of the Subject Image as set forth herein.

84.  That, upon information and belief, on or before June of 2013, Nice Kicks employed the subject image on its website www.nicekicks.com in connection with the advertising, marketing, and/or promotion of NIKE merchandise, including the Nike Air Trainer SC High (see Exhibit "D" hereto).

85.  That, upon information and belief, NIKE facilitated, enabled, provided, made the Subject Image available, and/or otherwise contributed to Nice Kicks' use of the Subject Image as set forth herein.

86.  That, upon information and belief, on or before June of 2013, Steiner Sports Memorabilia (hereinafter "Steiner") a reputable and premier retailer of sports memorabilia, has employed plaintiff's Image in prints that it is selling at auction.

87.  That Steiner has stated in connection with a signed print of the Subject Image, that "[t]his autograph is extremely unique because it is the same photo used in his famous 'The Ball Player' Nike Ad campaign' " (see Exhibit "D" hereto).

88.  That upon information and belief, Steiner did not print or manufacture or reproduce the Subject Image but rather was supplied such image from one or more apparently reputable third party sources.

89.  That, upon information and belief, NIKE facilitated, enabled, provided, made the

11

Subject Image available, and/or otherwise contributed to Steiner's use of the Subject Image as set forth herein.

90.  That photographs and posters of the Subject Image have been and are being sold by entities too numerous to mention herein but which include Major League Baseball (see Exhibit "D" hereto).

91.  That Plaintiff is engaged in due diligence with respect to sales by third parties as pre-discovery requests for such disclosure have gone unanswered.  That sales of such prints of the Subject Image have been and are being made in the State of New York and elsewhere.

92.  That, upon information and belief, NIKE's use of the image in social media facilitated inestimable infringements of NOBLE's Image by third parties.  That by employing the Subject Image in social media, NIKE offending NOBLE's rights to control the publication of his image, as conferred to him by Title 17, USC § 106.

93.  That plaintiff, by counsel, reached out to NIKE, by email on May 3, 2013.

94.  That Plaintiff, by counsel, issued and delivered correspondence dated May 22, 2013 to defendant, requesting that NIKE provide plaintiff with inter alia, the full nature and extent of NIKE's unauthorized uses of plaintiff's Image, and any documents to rebut the presumption that the Images had been unlawfully used beyond the expiration of the license and in violation of Plaintiff's copyrights (a copy of said May 22, 2013 letter is annexed hereto as **Exhibit "E"**).

95.  That plaintiff has made Herculean efforts pursuant to Rule 11 with defendant Nike and its counsel to obviate the need for the filing of this complaint.

96.  That as of the date of this complaint, the parties have been unable resolve their disputes without the need for litigation, despite plaintiff's good faith attempts at same.

97.  That as of the date of this complaint, plaintiff is unaware of the full nature and extent

of NIKE's uses of plaintiff's Image, such information being within the custody, possession and control of NIKE.

98. That as of the date of this Complaint, plaintiff is unaware of the identity of each third party to which NIKE has provided and/or made the Image available, such information being within the custody, possession and control of NIKE.

99. That Plaintiff and his counsel have spent weeks tracing down the source(s) and retailers of the offending images and anticipate such process will continue for some time.

100. That, upon information and belief, NIKE has previously, without seeking or obtaining the permission of NOBLE, employed the subject image without NOBLE's license, authorization or consent.

101. That, upon information and belief, in and/or around the late 1980's and/or early 1990's, NIKE exceeded the scope of the license that it procured for the use of plaintiff's Image – repeatedly.

102. That, upon information and belief, in 2007, NIKE released a set of NIKE dunk shoes honoring Bo Jackson and employed plaintiff's Image in connection with the advertising promotion and/or marketing of said shoes, without a license, authorization or consent for same.

103. That, upon information and belief, in 2009, NIKE released a set of NIKE cross training shoes, inspired by Bo Jackson, and employed plaintiff's Image in connection therewith, without a license, authorization or consent for such use.

104. That such unauthorized uses of plaintiff's Image by NIKE represent but a sampling of unauthorized uses of plaintiff's image, and demonstrate a pattern of behavior by NIKE.

105.        That, upon information and belief, in or around October of 2012, NIKE had already planned to use the subject image in connection with its advertising of Bo Jackson-related footwear.

106.        That NIKE knew in December of 2012 that it had not secured a written and executed license with NOBLE for the use of the Subject Image.  Notwithstanding such knowledge, NIKE used the subject image in or around December of 2012 on at least social media websites, such as Facebook, Twitter, Instagram.

107.        That such uses of the Subject Image on social media website(s) serve to advertise, market and promote the NIKE brand, and Bo-Jackson-related merchandise, such as the newly-released footwear.

108.        That upon information and belief and exclusive of any fees paid to Bo Jackson, Nike has expended hundreds of millions of dollars in connection with its media placements, advertising, promotional campaigns and related uses of the Subject Image.

109.        That Nike is a sophisticated licensor and licensee of intellectual property and has at all times relevant access to lawyers and licensing experts whose expertise can be drawn upon in connection with the securing of any necessary licenses, registrations and/or permissions.

110.        That upon information and belief, Nike has procedures and protocols in place to prevent the blatant violation of the rights of private citizens including but not limited to an author who possesses a registration to a copyrighted work.

111.        That the defendant has no defense at law to the claims set forth herein.

112.        Paragraphs "1" through "111" are incorporated by reference with respect to each of the below counts or claims for relief.

14

**FIRST CLAIM FOR RELIEF**
Copyright Infringement
Under Section 501 of the Copyright Act

113.        That the use(s) of the Plaintiff's Image by the defendant in connection with

the advertising, marketing and/or promotion of the NIKE brand and/or its products, including but

not limited to the publication of the Subject Image on social media website(s), was and is without

the plaintiff's authorization, license or consent.

114.        That, upon information and belief, the defendant has infringed the

copyright for Plaintiff's Image.

115.        That, upon information and belief, the aforementioned acts of the

defendant constitute federal statutory copyright infringement under Section 501 of the Copyright

Act in violation of the rights granted to NOBLE as copyright holder.

116.        That, upon information and belief, defendant's use of the subject Image

was willful, intentional and in bad faith.

117.        That, upon information and belief, defendant had actual and/or constructive

knowledge and/or through the exercise of ordinary business care and/or the examination of public

records, knew or should have known that the plaintiff held the copyright in the Image, that

defendant never had (at any of the relevant times herein since the early 1990's) a license, consent,

or authorization by plaintiff for the use of Plaintiff's image in any media or for any purpose

whatsoever, and that any such use would be in violation of plaintiff's copyright.

118.        That as a result of defendant's acts, plaintiff has been and will continue to

be damaged in an amount as yet to be determined.

119.        That the full nature and extent of defendant's use(s) of plaintiff's Image

remains unknown, such information being within the custody possession and control of defendant,

15

and for which plaintiff expects to learn through discovery.

120.          That Plaintiff is further entitled to damages, attorneys' fees and costs under

Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful,

intentional, malicious and bad faith nature of defendant's copyright infringement, and as an

alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his

actual damages and any additional profits of the defendants, or one or more of them, attributable to

the infringement as under 17 U.S.C. Sections 504 (a)-(b).


**SECOND CLAIM FOR RELIEF**
Copyright Infringement
Under Section 501 of the  Copyright Act

121.          That the use of the Plaintiff's Image by the defendant in connection with

the advertising, marketing and/or promotion of the NIKE brand and/or its products, including but

not limited to the publication of the Subject Image on social media website(s), was and is without

the plaintiff's authorization, license or consent.

122.          That, upon information and belief, the defendant has infringed the

copyright for Plaintiff's Image.

123.          That, upon information and belief, the aforementioned acts of the

defendant constitute federal statutory copyright infringement under Section 501 of the Copyright

Act in violation of the rights granted to NOBLE as copyright holder.

124.          That, upon information and belief, defendant's use(s) of the subject Image

was made with reckless disregard for the intellectual property rights of NOBLE.

125.          That, upon information and belief, defendant had actual and/or constructive

knowledge and/or through the exercise of ordinary business care and/or the examination of public

records, knew or should have known that the plaintiff held the copyright in the Image, that

16

defendant never had (at any of the relevant times herein since the early 1990's) a license, consent, or authorization by plaintiff for the use of Plaintiff's image in any media or for any purpose whatsoever, and that any such use would be in violation of plaintiff's copyright.

126.     That, upon information and belief, defendant's use of the Image in violation of plaintiff's copyright was negligent in that it knew or should have known that it was without a license for the use(s) complained of herein.

127.     That as a result of defendant's acts, plaintiff has been and will continue to be damaged in an amount as yet to be determined.

128.     That the full nature and extent of defendant's use(s) of plaintiff's Image remains unknown, such information being within the custody possession and control of defendant, and for which plaintiff expects to learn through discovery.

129.     That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional, malicious and bad faith nature of defendant's copyright infringement, and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual damages and any additional profits of the defendant, attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

## THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement

130. That, upon information and belief, NIKE, as well as at least companies such as Steiner Sports Memorabilia, Major League Baseball, Sneaker Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one or more of them, have directly infringed Plaintiff's copyright(s) by, *inter alia* employing, publishing, distributing, sublicensing, manufacturing, editing, cropping and/or

enabling the copying or appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof) in connection with the advertising, marketing and/or promotion of the NIKE brand, and NIKE merchandise as described more fully hereinabove, in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. Sections 106 and 501.

131. That, upon information and belief, NIKE is liable as a contributory infringer for the copyright infringement committed via: selecting, employing, printing, manufacturing, editing, cropping, sublicensing, selling, distributing, and/or enabling the copying or appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof); and that such use(s) were in violation of Plaintiff's copyrights.

132. That, upon information and belief, NIKE had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public and/or business records, knew or should have known that Plaintiff held rights in the Image(s), and that any unauthorized use of such Image(s) or of derivative works thereof was in violation of Plaintiff's copyright(s).

133. That upon information and belief, NIKE knew or should have known that it was not authorized to use Plaintiff's Image(s).

134. That, upon information and belief, NIKE has directly and/or indirectly, willfully and/or negligently caused, enabled, encouraged, facilitated, and materially contributed to the infringement(s) described herein by selecting, employing, printing, publishing, manufacturing, editing, cropping, sublicensing, distributing, and/or enabling the copying or appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof), in violation of Plaintiff's copyrights.

135. That, upon information and belief, NIKE has, in addition to the actions above,

18

provided the tools (i.e. a print or electronic copy of Plaintiff's Image, and/or electronically displayed the Image(s) in a manner whereby the Image could be copied or appropriated), support, and/or instruction for the infringement(s), via the infringements described herein, in violation in Plaintiff's copyright(s).

136. That, upon information and belief, NIKE, by *inter alia*, selecting, distributing, modifying, altering, cropping, editing, sublicensing, providing, and/or enabling the copying or appropriation of the Image(s) in connection with *inter alia*, the marketing, advertising and/or promotion of NIKE and/or its merchandise, contributed to the infringement(s) by companies such as Steiner Sports Major League Baseball, Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one or more of them.

137. That, upon information and belief, NIKE had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public and/or business records, knew or should have known of Plaintiff's rights in the Image(s), and that any use of such Image(s) or of derivative works thereof would be in violation of Plaintiff's copyright(s).

138. That, upon information and belief, through the conduct described hereinabove, NIKE is contributory liable for the infringement(s) described herein.

139. That, upon information and belief, the aforementioned acts of NIKE constitutes federal statutory contributory copyright infringement under Section 501 of the Copyright Act in violation of the exclusive rights granted NOBLE as copyright holder.

140. That, upon information and belief, NIKE's infringement(s) are and have been willful, intentional, purposeful, and/or in disregard of the rights of Plaintiff, and have caused substantial damage to Plaintiff.

141. That as a direct and proximate result of defendant(s)' infringement(s), Plaintiff has

been and will continue to be damaged in an amount as yet undetermined.

142. That the full nature and extent of defendant's use(s) of plaintiff's Image remains

unknown, such information being within the custody possession and control of defendant, and for

which plaintiff expects to learn through discovery.

143. That Plaintiff is entitled to the maximum statutory damages under 17 U.S.C. Section

504 (c), and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is

entitled to recover his actual damages and any additional profits of the defendants, or one or more

of them, attributable to the infringement(s) as under 17 U.S.C. § 504 (a)-(b).

144. That Plaintiff is further entitled to damages, attorneys' fees and costs under Section

504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the repeated and

systematic, willful, intentional, malicious and bad faith nature of defendant's copyright

infringement(s).

**FOURTH CLAIM FOR RELIEF**
Induced Copyright Infringement

145. That, upon information and belief, NIKE, as well as at least companies such as Steiner

Sports Major League Baseball,  Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one

or more of them, have directly infringed Plaintiff's copyright(s) by, *inter alia* employing,

publishing, distributing, sublicensing, manufacturing, editing, cropping and/or enabling the

copying or appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof) in

connection with the advertising, marketing and/or promotion of the NIKE brand, and NIKE

merchandise as described more fully hereinabove, in violation of Plaintiff's exclusive rights under

the Copyright Act, 17 U.S.C. Sections 106 and 501.

146. That, upon information and belief, NIKE is liable for inducing the copyright

infringement(s) of at least St Steiner Sports Major League Baseball,  Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one or more of them.

147. That NIKE has selected, employed, printed, manufactured, modified, altered, edited, cropped, distributed, sublicensed, provided, and/or enabled the copying or appropriation of Plaintiff's Image(s) or derivative work(s) thereof for use in connection with the promotion of NIKE, Bo Jackson, NIKE merchandise, and/or the distribution of photographs, or in any other manner.

148. That, as explained herein, upon information and belief, NIKE has actively facilitated, encouraged, and/or enticed at least companies such as Steiner Sports Major League Baseball,  Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one or more of them, to commit copyright infringement.

149. That NIKE upon information and belief, has induced and/or continue to induce infringement(s), willfully and/or negligently by, *inter alia:* employing, printing, publishing, or manufacturing plaintiff's Image(s), or derivative work(s) thereof, and/or by having previously sublicensed, distributed or enabled the copying or appropriation of such Image(s), or derivative work(s) thereof; thereby inducing at least companies such as Steiner Sports Major League Baseball,  Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one or more of them, to infringe on Plaintiff's copyright(s).

150. That, upon information and belief, said infringements have continued post notice, with NIKE having received constructive and/or actual notice of Plaintiff's copyrights and the corresponding infringement(s).

151. That NIKE, upon information and belief, has further induced and/or continue to induce infringement(s) by, *inter alia*, taking affirmative steps towards the selection of Plaintiff's Image

for use in connection with the advertising, marketing and/or promotion of NIKE, NIKE merchandise, and/or Bo Jackson, and/or providing, selecting, publishing, distributing, sublicensing, or enabling the copying or appropriation of such Image(s) to others, thereby inducing at least companies such as Steiner Sports Major League Baseball,  Bar Detroit, Nice Kicks, Facebook, Twitter, and Instagram, or one or more of them, among others, to infringe on Plaintiff's copyright.

152. That, upon information and belief, at all times relevant herein, NIKE was on constructive and/or actual notice of Plaintiff's rights to the Image and derivative works thereof, and that any unauthorized use thereof was in violation of Plaintiff's copyright.

153. That, upon information and belief, NIKE, a sophisticated licensor and licensee of intellectual property, failed to implement and/or properly and/or adequately execute rights clearance procedures with respect to Plaintiff's Image, thus employing and/or inducing the infringement of Plaintiff's Image in violation of Plaintiff's copyright.

154. That, upon information and belief, NIKE relied on the use of Plaintiff's Image for the success of its business, sale of its merchandise, and/or the promotion or marketing thereof.

155. That, upon information and belief, through the acts described hereinabove, NIKE is liable for inducing the infringement(s) described herein.

156. That, upon information and belief, NIKE's infringement(s) are and have been willful, intentional, purposeful, and with disregard of the rights of Plaintiff's, and have caused substantial damage to Plaintiff.

157. That as a direct and proximate result of defendant's infringement(s), Plaintiff is entitled to the maximum statutory damages under 17 U.S.C. Section 504 (c), and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual

damages and any additional profits of the defendants, or one or more of them, attributable to the infringement(s) as under 17 U.S.C. Sections 504 (a)-(b).

158. That pursuant to 17 U.S.C. Section 505, Plaintiff is entitled to his costs, including reasonable attorneys' fees.

## JURY DEMAND

159.         That Plaintiff requests a trial by jury of all issues.

**WHEREFORE**, Plaintiff demands judgment as against the defendant as follows:

**ON  THE FIRST CLAIM FOR RELIEF**-  (A) Award to plaintiff his actual damages incurred as a result of defendant's infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendant, including but not limited to wholly owned subsidiaries, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted image, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON  THE SECOND CLAIM FOR RELIEF**-  (A) Award to plaintiff his actual damages incurred as a result of defendant's infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining

and prohibiting the defendant, including but not limited to wholly owned subsidiaries, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted image, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

ON  THE THIRD CLAIM FOR RELIEF-  (A) Award to plaintiff his actual damages incurred as a result of defendant's infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendant, including but not limited to wholly owned subsidiaries, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted image, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

ON  THE FOURTH CLAIM FOR RELIEF-  (A) Award to plaintiff his actual damages incurred as a result of defendant's infringement(s), and all profits realized as a result of its infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendant, including but not limited to wholly owned subsidiaries, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted image, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

Prejudgment interest on all sums due;

24

And such other and further relief as this Court may deem just and proper inclusive of any

and all relief or remedies allowable by the statutes referenced above or applicable hereinabove.

Dated: New York, New York
       June 24, 2013

                                        Yours, etc.,

                                        _____
                                        Edward Greenberg, Esq. (ECG 5553)
                                        Tamara L. Lannin, Esq. (TL 3784)
                                        570 Lexington Avenue, 19th Floor
                                        New York, NY 10022
                                        Tel: (212) 697-8777
                                        Fax: (212) 697-2528
                                        *Attorneys for Plaintiff*

25